IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JERRY BRIGHT,

      Petitioner,               No. CIV S-09-1774 JAM CHS

   vs.

JOHN W. HAVILAND,

      Respondent.    <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

## I.  INTRODUCTION

Petitioner Bright, a state prisoner, proceeds pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner stands convicted of offenses including felon in possession of a firearm, Sacramento County Superior Court, case number 06F11307, for which he is serving a five year prison sentence.

## II.  BACKGROUND

The following factual summary was taken from the unpublished opinion of the California Court of Appeal, Third District, on direct review of petitioner's conviction.  These factual findings have not been rebutted with clear and convincing evidence and are therefore presumed correct.  28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004).

In December 2006, Folsom Police Officer Hector Alvarez observed a vehicle swerve into a ditch and then come back onto the road, making a series of erratic corrections or fishtails. There were no other vehicles on the road. Alvarez began to pursue the vehicle, a Ford Explorer, and followed it as it made a U-turn before turning into an apartment complex. The Explorer pulled into what Alvarez assumed was its assigned parking stall at the apartment complex. Alvarez activated the lights of his patrol car and pulled in behind the vehicle. The driver, later identified as defendant Jerry Bright, the sole occupant, started to get out of the Explorer. Alvarez ordered him to get back inside. Apparently understanding Alvarez's commands, defendant complied.

Alvarez approached the Explorer on the driver's side while his partner, Officer Steven Bailey, approached on the passenger side. The driver's side window was down. Alvarez noticed a smell of alcohol and that defendant's eyes were bloodshot. As Alvarez began talking with defendant, Bailey shined his flashlight into the passenger side of the Explorer and saw a handgun within arms reach of defendant on the front passenger seat. The gun, a .40-caliber Beretta, was in plain view, with the barrel of the gun pointed downward and the handle of the gun leaning next to, or in contact with, the back of the passenger seat nearest to the driver's seat. Bailey signaled to Alvarez that there was a gun in the vehicle. Defendant was arrested and placed in the officer's patrol car. Bailey recovered the gun, which had a magazine clip loaded with 10 bullets.

While defendant was being arrested, the officers noticed, in addition to defendant's bloodshot eyes and the strong smell of alcohol, that defendant's speech was slurred, although intelligible, and his gait was unsteady. His pants were unzipped and the crotch was wet, apparently from urine. Defendant did appear to understand what was happening and what was being asked of him. He complied fairly readily with the officer's commands, although his demeanor and language were increasingly defiant and aggressive. When Folsom Police Sergeant Andrea Chapman arrived at the scene, defendant called her by rank and complained of his treatment by Alvarez and Bailey.

The officers determined the Explorer was registered to Akisha Byrd, who lived at the apartment complex in an apartment right in front of where the Explorer was parked. Alvarez spoke with Byrd who confirmed her ownership of the Explorer. Bryd had given defendant, her boyfriend, permission to take the Explorer at about 8:00 p.m. the previous night. Byrd testified there was no gun in the Explorer when defendant borrowed it. Byrd testified she does not own a firearm and had never before seen the Beretta seized from her Explorer. She has never seen defendant with a gun in the 10 years she has known him.

Bryd testified that while she allows defendant to use her Explorer, she does not allow his friends to be in the Explorer. She knows defendant disregards her wishes, in part, because she has found items in the Explorer that do not belong to either her or defendant. Bryd testified defendant has a drinking problem and that he had been drinking heavily over the past year. He often does not recall later what happened when he was drinking.

No fingerprints were found on the Beretta, the magazine clip or the bullets. The fingerprint identification technician testified it is difficult to obtain fingerprints from the handle of a gun. Defendant's blood sample taken after his arrest showed he had a blood-alcohol level of 0.21 percent.

It was stipulated defendant was convicted of a felony in 1999 in Sacramento County.

Defendant testified on his own behalf and admitted being drunk and driving that night. He testified he drank two 40-ounce beers and multiple mixed drinks in the approximately four hours prior to his arrest. Defendant claimed he was asked by a friend to drive a friend of that friend back to Orangevale from the club in South Sacramento where they had been drinking. Defendant drove this person, whose name he could not remember, to a location in Orangevale which he could not remember. Defendant could not provide any description of the person to whom he gave a ride except that he was African-American.

Defendant denied the Beretta was his and testified he never touched the gun. He testified he did not know the gun was in the Explorer. Defendant said he did not notice it. He wasn't paying attention. He did not remember it. He did not know anything about the gun. He did not know it was there. He did not know if the friend of his friend that he gave a ride to left the gun, but it was possible. He admitted he did not tell the police officers that there had been someone else in the car. He did not recall interacting with the police because he was drunk. He remembered being in a holding tank somewhere. Defendant never tried to find the person he gave a ride to that evening.

*People v. Bright*, No. C057440, slip op. at 2-6 (Cal. App. 3rd Dist. 2009).

A jury convicted petitioner of being a felon in possession of a firearm, misdemeanor driving under the influence (DUI), and misdemeanor driving with an elevated blood-alcohol level over 0.15. In a bifurcated court trial, the court found he had two prior DUI convictions, one prior serious felony juvenile adjudication for attempted second degree murder with personal use of a firearm and personal infliction of great bodily injury, and that he had

3

1    served a prior prison term or possession of a controlled substance.  The trial court ruled

2    petitioner's prior juvenile adjudication could be used as a "strike" for purposes of California's

3    habitual criminals, or "three strikes" law.  *See* Cal. Penal Code §§ 667(b)-(i), 1170.12, 1192.7(c).

4            For the misdemeanor convictions, petitioner was sentenced to time served.  For

5    the firearm offense, he received an aggregate term of five years in state prison, consisting of a

6    two-year middle term, doubled pursuant to the three strikes law, plus one additional year for the

7    prior prison term enhancement.

8            On direct review, the California Court of Appeal, Third District, affirmed the

9    judgment and sentence.  A petition for review to the California Supreme Court was denied.  The

10    parties agree that petitioner has exhausted state remedies with respect to the claims presented.

11 III.  CLAIMS

12            Each of petitioner's six grounds for relief will be separately set forth and

13    discussed herein.  Petitioner claims:

14       (A) his due process rights were violated when the trial court failed to instruct the jury on

15    the defenses of mistake of fact and accident;

16       (B) the trial court erred in its instruction on the illegal firearm possession charge; in the

17    alternative, trial counsel rendered ineffective assistance;

18       (C) the prosecutor committed misconduct during closing argument;

19       (D) the trial court improperly gave an additional instruction aimed to help the jury break

20    an impasse in deliberations;

21       (E) the trial court erred in its instruction on the reasonable doubt standard;

22       (F) use of a prior juvenile adjudication for enhancement purposes at sentencing deprived

23    him of his right to jury trial.

24 IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

25            An application for writ of habeas corpus by a person in custody under judgment of

26    a state court can be granted only for violations of the Constitution or laws of the United States.

4

28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

## V.  DISCUSSION

### A.    Instructions on Mistake of Fact and Accident

Petitioner contends the trial court violated his due process rights by failing to instruct the jury, *sua sponte*, on mistake of fact[1] and accident[2] as affirmative defenses to the

---

[1]The relevant state instruction on mistake of fact provides:

> The defendant is not guilty of _____ <insert crime[s]> if (he/she) did not have the intent or mental state required to commit the crime because (he/she) [reasonably] did not know a fact or [reasonably and] mistakenly believed a fact.

> If the defendant's conduct would have been lawful under the facts as (he/she) [reasonably] believed them to be, (he/she) did not commit _____ <insert crime[s]>.

> If you find that the defendant believed that <insert alleged mistaken facts> [and if you find that belief was reasonable], (he/she) did not have the specific intent or mental state required for _____ <insert crime[s]>.

charge of illegal possession of a firearm.

On direct appeal, in the last reasoned state court decision applicable to this claim, the California Court of Appeal rejected the claim of error.  The court of appeal noted "[a] trial court must instruct sua sponte on the general principles of law that are closely and openly associated with, and necessary to, the jury's understanding of the case."  *People v. Bright*, *supra*, slip op. at 6.  The state court explained that, under California law, a mistake of fact "refers to a defendant's erroneous belief in some fact or circumstance that disproves criminal intent," but that in this case, there was no evidence that petitioner held any such erroneous belief:

> For example, defendant did not testify that he mistakenly believed the item on the passenger seat next to him was a wallet, a cell phone or a squirt gun. Instead, defendant's sole claim was that he did not know there was anything next to him. Essentially, he claimed he was unaware of its presence. He did not notice the gun; he did not see the gun or pay attention to what was on the seat next to him; he knew nothing about the gun. Defendant's evidence was sole[l]y a denial of the knowledge element of possession of a firearm by a felon in violation of section 12021, subdivision (a). (*People v. Snyder* (1982) 32 Cal.3d 590, 592.) Defendant's defense was not that he had made a mistake of fact.

*People v. Bright*, *supra*, slip. op. at 7-8.

/////

---

> If you have a reasonable doubt about whether the defendant had the specific intent or mental state required for _____ <insert crime[s]>, you must find (him/her) not guilty of (that crime/those crimes).

CALCRIM No. 3406.

[2] The relevant state instruction on accident provides:

> The defendant is not guilty of _____ <insert crime[s]> if (he/she) acted [or failed to act] without the intent required for that crime, but acted instead accidentally.  You may not find the defendant guilty of _____ <insert crime[s]> unless you are convinced beyond a reasonable doubt that (he/she) acted with the required intent.

CALCRIM No. 3404.

The state court likewise noted that under California law, the defense of accident negates criminal liability when a person commits a prohibited act "through misfortune or by accident, when it appears that there was no evil design, intention or culpable negligence." *People v. Bright*, *supra*, slip. op. at 8 (quoting Cal. Penal Code § 26).  But again, that was not petitioner's defense:

> Here defendant did not claim he committed the prohibited act through misfortune or accident.  Instead, defendant testified that he never knowingly possessed the firearm, i.e., that he did not commit the prohibited act. Defendant denied seeing the gun next to him and never claimed.... that his temporary knowing control or right to control the gun was the result of misfortune or accident. He denied all knowledge of the gun. Defendant's defense was not "misfortune or accident."

*People v. Bright*, *supra*, slip. op. at 9 (citations omitted).

Under California law, "[t]he duty to instruct sua sponte arises only when the facts of the case support the particular instruction." *People v. Bright*, *supra*, slip. op. at 6 (citing *People v. Montoya*, 7 Cal.4th 1027, 1047 (1994)).  Thus, the state court of appeal held, [t]he trial court had no duty to instruct here on mistake of fact or accident because no evidence supported such defenses." *People v. Bright*, *supra*, slip op. at 6-7.

The state court's decision in this regard was not contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court.

Applying federal common law and the federal rules of criminal procedure, the United States Supreme Court has held, "[a]s a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1998).  No federal precedent requires, however, that a state trial court instruct, *sua sponte*, on affirmative defenses in a criminal trial where unsupported by the evidence.

The gravamen of this claim concerns the interpretation and application of state evidentiary law.  *See generally Gilmore v. Taylor*, 508 U.S. 333, 343-44 (1993) (rejecting claim

1   that an instruction that arguably prevented the jury from considering an affirmative defense

2   violated due process, as such a conclusion "would make a nullity the rule reaffirmed in *Estelle v.*

3   *McGuire...*"), *see also*, *e.g.*, *Tirado v. Warden*, 576 F.Supp.2d 1104, 1111 (C.D. Cal. 2008) (no

4   federal issue in claim that trial court erred in refusing to instruct jury on the affirmative defense

5   of reasonable belief of consent to the offense of rape).  Errors in the application of state law are

6   not cognizable in a federal habeas corpus proceeding.  *See Estelle v. McGuire*, 502 U.S. 62, 67-

7   68 (1991).  The Supreme Court has repeatedly admonished federal courts reviewing habeas

8   corpus petitions that they are bound by a state court's interpretation of state law, including one

9   announced on direct appeal of the challenged conviction.  *E.g.*, *Bradshaw v. Richey*, 546 U.S. 74

10  (2005).

11          Petitioner's claim of instructional error does not raise a cognizable federal claim

12  unless the error, considered in context of all the instructions and the trial record as a whole, "so

13  infected the entire trial that the resulting conviction violates due process."  *Estelle*, 502 U.S. at

14  71-72; *see also Henderson v. Kibbe,* 431 U.S. 145, 152-55, n.10 (1977); *Cupp v. Nauhten,* 414

15  U.S. 141, 146-47 (1973).  In addition, on federal habeas corpus review, no relief can be granted

16  without a showing that the instructional error had a "substantial and injurious effect or influence

17  in determining the jury's verdict."  *Calderon v. Coleman*, 525 U.S. 141, 147 (1998) (citing

18  *Brecht*, 507 U.S. at 637).  An omitted instruction is less likely to be prejudicial than a

19  misstatement of the law.  *Kibbe*, 431 U.S. at 155.  In addition, reversal will rarely be justified for

20  failure to give an instruction when no objection was made in the trial court, as the case is here.

21  *See Id*. at 154.

22          Even assuming for purposes of this opinion that petitioner's claim is cognizable-

23  i.e., that a criminal defendant in state court has a due process right to have the jury instructed on

24  affirmative defenses- it is still clear that relief is not warranted.  The alleged omission of

25  instructions on the affirmative defense instructions on mistake of fact and accident did not

26  implicate the fairness of petitioner's trial, and did not have substantial and injurious effect or

1  influence in determining the jury's verdict.

2         Petitioner's jury was instructed that, in order to find him guilty of unlawfully

3  possessing a firearm, the prosecution must prove, among other elements, that he knew he

4  possessed a firearm.  (Clerk's Transcript (hereinafter "CT") at 102; Reporter's Transcript

5  (hereinafter "RT") at 309.)  The trial court further instructed the jury that his unlawful act had to

6  be accompanied by wrongful intent (CT at 95; RT at 306), and that evidence of voluntary

7  intoxication could be considered as to the issue whether he had knowledge that he possessed a

8  firearm (CT at 104-55; RT at 310-11).

9         The instructions given adequately embodied the defense's theory of the case: that

10  petitioner was unaware of the presence of the gun.  When a trial court's instructions adequately

11  encompass the defense theory of the case, the failure to give specific instructions on that theory

12  does not violate due process.  *See Duckett v. Godinez*, 67 F.3d 734, 745-46 (9th Cir. 1995) (no

13  constitutional error found on habeas corpus review in state court's failure to give alibi

14  instruction); *United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir. 1990) ("it is not reversible

15  error to reject a defendant's proposed instruction on his theory of the case if other instructions, in

16  their entirety, adequately cover that defense theory").  Due process does not require instruction

17  on a defense theory when the evidence does not support such a theory as defined by state law.

18  *See Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) (because petitioners failed to

19  demonstrate that they believed they were in imminent peril, their due process rights were not

20  violated by trial court's refusal to instruct on imperfect self-defense); *Taylor v. Withrow*, 288

21  F.3d 846, 853-54 (6th Cir. 2002) (although the failure to instruct jury on self-defense can rise to a

22  due process violation under some circumstances, evidence was insufficient to require the

23  instruction under state law).

24         As the state court of appeal held, petitioner did not claim to have believed that the

25  gun was another object or that his knowing control of the gun was the result of accident or

26  misfortune.  Rather, he maintained that he had no knowledge of the presence of the gun.  Because

1  no evidence supported a defense theory of mistake of fact or accident, the trial court's alleged

2  failure to instruct on those defenses did not violate due process and did not have substantial and

3  injurious effect or influence on the verdict.

4         B.       Instructions on the Elements of Firearm Possession

5         In a related claim, petitioner contends that the given instruction on the firearm

6  possession charge improperly suggested that it was a crime of "strict liability" – i.e., that the

7  mere presence of the firearm, or the fact that petitioner had access to the firearm, was sufficient

8  to support a conviction.  In the alternative, petitioner contends that his counsel was ineffective for

9  failing to request an instruction that mere presence or access to the gun without more, was

10 insufficient to show possession or control, and in failing to object to the prosecutor's argument

11 on the element of possession.

12        At trial, the jury was instructed, in relevant part:

13        The crime charged in Count One [unlawful possession of a
          firearm] requires proof of the union or joint operation of act and
14        wrongful intent.  In order to be guilty of this crime, a person must
          not only intentionally commit the prohibited act but must do so
15        with a specific mental state.

16 (RT at 306.)

17        The defendant is charged in Count One with unlawfully possessing
          a firearm.  To prove that the defendant is guilty of this crime, the
18        People must prove that, one, the defendant possessed a firearm;
          two, the defendant knew that he possessed the firearm; and three,
19        the defendant had previously been convicted of a felony.

20 (RT at 309 [CALCRIM No. 2511].)

21        A person does not have to actually hold or touch something to
          possess it.  It is enough if the person has control over it or the right
22        to control it, either personally or through another person.

23 (RT at 310.)

24        During closing argument, the prosecutor referred to the first element of the

25 offense described in CALDRIM No. 2511 as follows:

26 /////

10

The first charge that he's dealing with is Count One, 12021, basically, a felon in possession of a gun.  This is a felony count.  This is the main count that seems to be the question and the contention about did Mr. Bright commit this crime.  There is basically three elements [sic] that have to be proved for this particular count.

First one, the defendant possessed or had custody or control of a firearm.  So we have to ask ourselves, okay, element – what facts do we have to go to that element? ... Well, we've heard from the officer that when they approached Mr. Bright, arm's length away, right there sitting in the passenger seat, was that loaded Beretta.  Is that possession, custody, or control?

The judge is actually going to give you jury instructions on what that means, but it basically means that did he have access to the weapon?  Was he in custody of it?  It doesn't mean that he has to own the weapon.  It doesn't mean it has to be registered to him.  It doesn't mean it has to be his.  It means, did he have control over it?  Did he have custody of it?

Think back to Officer Bailey's testimony.  He said the weapon was positioned in a manner that all Mr. Bright would have to do, if he wanted to grab it, was turn, reach, and up.  That is control and custody.  That is having possession of a firearm.

(RT at 258-59.)

As to petitioner's claims regarding the CALCRIM No. 2511 instruction, the prosecutor's argument, and counsel's alleged ineffectiveness, the state court of appeal held:

The portion of CALCRIM No. 2511 informing the jury that a person does not have to hold or touch something in order to possess it, but that control or the right to control is sufficient, correctly states the law that physical possession is not required, constructive possession or control may be sufficient for the offense of being a felon in possession of a firearm. (*People v. Nieto* (1966) 247 Cal.App.2d 364, 368.) Furthermore, while "'[p]roof of opportunity of access'" to a prohibited item "'without more,' will not support a finding of unlawful possession," possession may be imputed when the item is found in a location subject to the immediate and exclusive control of the defendant. (*Goodlow v. Superior Court* (1980) 101 Cal.App.3d 969, 975.) Here, defendant borrowed his girlfriend's Explorer and had been driving it that night and into the early morning. There was no one else in the Explorer at the time defendant parked in front of his girlfriend's apartment. The gun was found on the front passenger seat within arm's reach of defendant as he sat in the driver's seat.

1    On this basis we reject defendant's claim that his counsel was
2    ineffective for failing to object to the referenced portion of the
     prosecutor's argument. Such argument correctly stated the law
     applicable to this case. We likewise reject defendant's claim that
3    the trial court had a sua sponte duty to instruct that "mere
     presence" or "access" was insufficient to show possession as such
4    an instruction would not have been a complete and accurate
     statement of the law. Nor was defense counsel ineffective in failing
5    to request an instruction regarding "mere presence" or "access" as
     such an instruction would not have fully or accurately informed the
6    jury of the applicable principles of law.

7  *People v. Bright*, *supra*, slip. op. at 11-12.  After reviewing the jury instructions that were given

8  at petitioner's trial, the state court concluded:

9    Under the totality of these instructions the jury would not have
     reasonably understood that the mere presence of the gun in the
10   Explorer or its mere accessibility to defendant was sufficient,
     without anything more, to find defendant guilty of being a felon in
11   possession of a firearm. The jury could not have believed
     defendant guilty if all he did was "glance[ ] over and mentally
12   recognize[ ] the shape of a gun on the seat[.]" Defendant's
     argument improperly isolates one portion of the offense apart from
13   its other elements; one portion of the instructions apart from the
     instructions as a whole. Instructions are not considered in isolation.
14   (*People v. Holt* (1997) 15 Cal.4th 619, 677.)

15 *People v. Bright*, *supra*, slip. op. at 14.

16       Again, a claim of instructional error is generally not a basis for habeas corpus

17 relief.  *Estelle v. McGuire*, 502 U.S. at 71-72.  To the extent petitioner makes a due process claim

18 premised on the challenged instruction, the claim fails.  The Supreme Court has explained that "a

19 single instruction to a jury may not be judged in artificial isolation but must be viewed in the

20 context of the overall charge."  *Boyde v. California*, 494 U.S. 370, 378 (1990).  "If the charge as

21 a whole is ambiguous the question is whether there is a 'reasonable likelihood that the jury has

22 applied the challenged instruction in a way' that violates the Constitution."  *Middleton v.*

23 *McNeal*, 541 U.S. 433, 437 (2004) (quoting *Estelle v. McGuire*, 502 U.S. at 72.)

24       In this case, viewing the instructions as a whole, and each in context of the others,

25 the jury necessarily found that petitioner intended to possess the gun.  Even assuming, for

26 purposes of this opinion, that a single instruction or portion of an instruction was ambiguous, the

1   instructions as a whole were accurate and adequate.  In light of all the instructions given, it is not

2   reasonably likely that the jury convicted petitioner based solely on a finding of mere presence or

3   access to the gun.  The state court's rejection of petitioner's instructional error claim in this

4   regard is not contrary to, or an unreasonable application of clearly established Supreme Court

5   precedent.

6            Petitioner's alternative argument of ineffective assistance of counsel also fails.  To

7   demonstrate a denial of the Sixth Amendment right to the effective assistance of counsel, a

8   petitioner must establish that counsel's performance fell below an objective standard of

9   reasonableness, and that he suffered prejudice from the deficient performance.  *Strickland v.*

10  *Washington*, 466 U.S. 668, 690 (1984).  Prejudice is found where there is a reasonable

11  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

12  been different.  *Id.*

13           Because the given instructions accurately stated California law, and because the

14  additional instruction proposed by petitioner would not have fully or accurately informed the jury

15  on the elements of the offense, petitioner fails to demonstrate deficient performance or prejudice

16  for counsel's alleged failure to request additional instruction.  Likewise, nothing in the

17  prosecutor's argument on the elements of this offense appears to have been objectionable by

18  defense counsel.  In the quoted portion of argument, above, the prosecutor argued that the mere

19  fact or presence of the gun demonstrated the element of possession.  The prosecutor went on to

20  address the additional element of knowledge on the firearm possession offense, going so far as to

21  state that the element of knowledge appeared to be "the only element I think in this whole trial

22  that may be in contention."  (RT at 259.)  Where there was no instructional omission or improper

23  argument by the prosecutor, petitioner fails to demonstrate ineffective assistance of counsel.

24           C.       Prosecutorial Misconduct

25           Petitioner claims that a reference by the prosecutor to Jack Ruby during closing

26  argument constituted prejudicial misconduct.  The prosecutor argued, in relevant part:

1                [T]he gun is right there.  Obviously, he knows what is going on.
Why are we here?  Why is this even going to trial?  Some of you
2                may be thinking that.  And the reason that we are here is because it
is the defendant's right.

3

4                We have the best justice system in the world.  And maybe that is
just my opinion, but I'm pretty confident saying that is the case.
And our justice system is one that, even if you are found right next
5                to a gun in arm's length and you barely know what's going on, you
can't be found guilty just like that.  You still have your right to a
6                jury trial.  You have your right to your date in court, and you have
the right to take the stand if you choose, and you have the right to
7                be represented.

8                That is what this is about, his rights.  He's presumed innocent until
proven otherwise, until evidence is brought to show that he is
9                responsible for this crime.  But just because you have that
presumption, just because that's the way our legal system works, it
10              doesn't mean that he is not guilty of this crime.

11              An example that I use is this man, Jack Ruby.  I imagine most
people are going to remember who Jack Ruby is.  But Jack Ruby,
12              for instance, shot Lee Harvey Oswald on national television.  The
whole world saw it.

13

14              He walked up to Oswald, pulls out a gun, and shoots him.  Some of
you may have seen it live.  Many of us saw it in history class.  But
it's right there.  Even though everyone sees that, even though it's
15              right there in front of you, Jack Ruby was presumed innocent until
he was proven otherwise, until he actually had his trial and 12
16              jurors said, you know what, you are guilty of that crime.

17  (RT at 261-62.)  After a brief sidebar requested by defense counsel but not transcribed, the

18  prosecutor concluded, before moving on to other topics of argument: "Mr. Bright is presumed

19  innocent until the evidence is brought to court to show otherwise.  And that is what was

20  happening the last day and a half of the testimony."  (RT at 263.)

21              Defense counsel began his closing argument by referring to the prosecutor's

22  example:

23              I take exception to the comparison to Jack Ruby.  There is no direct
evidence, none, that Jerry Bright owned this gun.  Nobody saw him
24              with it.  There's no fingerprints – there is no direct evidence.  No
police officer saw him grabbing the gun, touching the gun, looking
25              at the gun, hiding the gun.  There is no direct evidence that he
knew the gun was there.

26

1

2

3

> This case is not a formality exercise to go through a jury trial.  We are here because Jerry has said over and over in the court process, I'm not guilty of this crime, and I want a trial.  That's what this is about.

4    (RT at 273.)

5    On direct review, the California Court of Appeal held that petitioner had forfeited

6    the issue on appeal by failing to seek an admonishment at the time of the sidebar objection.  The

7    court of appeal additionally clarified that, even if it were to reach the merits of the claim, the

8    prosecutor's reference to Jack Ruby did not constitute prejudicial misconduct, because the "brief

9    comments were cut off by defense counsel's objection."  *People v. Bright*, *supra*, slip. op. at 16.

10   Although "[a]n admonition could have cured any harm at that point," the court noted, "defense

11   counsel appropriately chose instead to address the prosecutor's comments [in his own

12   argument]."  *Id.*

13   A prosecutor's "[i]mproper argument does not, per se, violate a defendant's

14   constitutional rights."  *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (citing *Darden v. Wainwright*, 477

15   U.S. 168, 181 (1986) and *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir. 1987), cert.

16   denied, 488 U.S. 948 (1988)).  On habeas corpus review, the narrow standard of due process

17   applies.  *Darden*, 477 U.S. at 181.  "The relevant question is whether the prosecutor's comments

18   'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"

19   *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

20   Factors to be considered in determining whether habeas relief is warranted include

21   whether the prosecutor manipulated or misstated the evidence; whether his comments implicated

22   other specific rights of the accused; whether the objectionable content was invited or provoked

23   by defense counsel's argument; whether the trial court admonished the jurors; and the weight of

24   the evidence against the defendant.  *Darden*, 477 U.S. at 181-82.  Relief is limited to cases in

25   which the petitioner can establish that the misconduct resulted in actual prejudice.  *See Johnson*

26   *v. Sublett*, 63 F.3d 926, 930 (1995) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38).

1    In this case, even if the prosecutor's statement was improper, it did not rise to the

2  level of a constitutional violation.  Respondent persuasively argues that the prosecutor's

3  reference to Jack Ruby in this case was somewhat less prejudicial because the prosecutor did not

4  liken petitioner's alleged actions to those of Jack Ruby.  Rather, he cited the infamous shooting

5  captured on camera to explain that all criminal defendants are entitled to a trial, no matter how

6  clear-cut the evidence might seem at first.  *Cf. United States v. Hawkins*, 480 F.2d 1151, 1154

7  (D.C. Cir. 1973) (improper to compare defendant's insanity defense to the unsuccessful insanity

8  defenses of other notorious criminals, including Jack Ruby); *United States v. Phillips*, 476 F.2d

9  538 (D.C. Cir. 1973) (misconduct found where prosecutor drew analogy between crime charged

10  and cases involving Sirhan Sirhan, James Earl Ray, Richard Speck and Jack Ruby).

11    Moreover, the reference was brief and isolated as opposed to being a repeated

12  occurrence throughout trial.  *See Duckett v. Godinez*, 67 F.3d at 742 (petitioner not entitled to

13  habeas corpus relief based on a single improper comment by the prosecutor regarding his own

14  belief of a witness's veracity); *Burton v. Renico*, 391 F.3d 764, 782 (6th Cir. 2004) (isolated

15  improper comment regarding presumption of innocence did not render trial so unfair as to violate

16  defendant's due process rights).  It did not manipulate or misstate any evidence, and did not

17  constitute the prosecutor's personal opinion about the evidence or petitioner's guilt.

18    For these same reasons, to any extent the reference constituted misconduct, it was

19  harmless.  Given that petitioner's alleged conduct did not resemble that of Jack Ruby, and that

20  the prosecutor used the Ruby incident only to illustrate a general principle of the criminal justice

21  system, the statement did not likely have a "substantial and injurious effect or influence in

22  determining the jury's verdict."  *See Brecht*, 507 U.S. at 637; *Shaw v. Terhune*, 380 F.3d 473,

23  478 (9th Cir. 2004) (applying *Brecht* standard to claim of prosecutorial misconduct in closing

24  argument).  Petitioner is not entitled to relief for this claim of error.

25  /////

26  /////

16

1            D.      Supplemental Instruction

2            Petitioner's trial consisted of two full days of testimony and argument after which

3    the jury began deliberations.  After approximately half a day of deliberations, the jury foreperson

4    advised the court that the jury "would like to know what will happen if we cannot reach a

5    decision."  The trial court conferred with counsel and provided the following written response:

6            The jury cannot speculate on what will or will not happen to the
             case if the jury cannot reach a verdict. [¶]  If you are unable to
7            reach a verdict, please so advise the Court. [¶]  If you are able to
             reach a verdict, please so advise the Court.

8

9    (CT at 78, 118.)  About an hour later, just before the evening recess, the foreperson sent a note

10   stating: "We have been unable to agree on Count 1.  Counts 2 & 3 we have been able to decide

11   on.  What should we do now, your advice would be appreciated."  (CT at 78, 119.)

12           The following day, prior to the jury's return, the trial court discussed the situation

13   with counsel.  The prosecutor requested that the court instruct the jury with a special instruction

14   in an attempt to break the impasse.  The trial court granted the request, but denied the

15   prosecutor's request to inquire into the numerical split based on concerns that such a move might

16   exert pressure on jurors in the minority.  Accordingly, the jury was brought into the courtroom

17   and instructed:

18           Ladies and gentlemen, at this time, I have further instructions and
             directions to give to you.  It has been my experience on more than
19           one occasion that a jury which initially reported it was unable to
             reach a verdict was ultimately able to arrive at a verdict.

20
             To assist you in your further deliberations, I'm going to further
21           instruct you as follows: Your goal as jurors should be to reach a
             fair and impartial verdict [a]s you are able to do so, based solely on
22           the evidence presented and without regard for the consequences of
             your verdict, regardless of how long it takes for you to do so.

23
             It is your duty as jurors to carefully consider, weigh, and evaluate
24           all of the evidence presented at the trial, to discuss your views
             regarding the evidence and to listen to and consider the views of
25           your fellow jurors.

26           In the course of your further deliberations, you should not hesitate

17

to re-examine your own views or to request your fellow jurors to re-examine theirs.  You should not hesitate to change a view you once held if you are convinced it is wrong or to suggest other jurors change their views if you are convinced they are wrong.

Fair and effective jury deliberations require a frank and forthright exchange of views.  As I previously instructed you, each of you must decide the case for yourselves, and you should do so only after a full and complete consideration of all the evidence with your fellow jurors.

It is your duty as jurors to deliberate with the goal of arriving at a verdict on this charge, if you can do so without violence to your individual judgment.  Both the People and the defendant are entitled to the individual judgment of each juror.

As I previously instructed you, you have the absolute discretion to conduct your deliberations in any way you deem appropriate.  May I suggest that since you have not been able to arrive at a verdict you have chosen, that you consider changing the method you have been following, at least temporarily, and try new methods.

For example, you may consider having different jurors lead the discussions for a period of time, or you may wish to experiment with reverse role playing by having those on one side of an issue present and argue the other side's position and vice versa.  This might enable you to better understand the other positions.

By suggesting you should consider changes in your methods of deliberations, I want to stress I'm not dictating or instructing you as to how to conduct your deliberations.  I merely find that you may find it productive to do what is ever necessary to ensure that each juror has a full and fair opportunity to express his or her views and consider and understand the views of other jurors.

I also suggest that you reread CALCRIM instructions 200 and 3550.  These instructions pertain to your duties as jurors and make recommendations on how you should deliberate.

The integrity of a jury trial requires the jurors at all times during their deliberation conduct themselves as required by the instructions.  CALCRIM instructions 200 and 3550 define the duties of a jury.  The decision of the jury render – strike that.

The decision the jury renders must be based on the facts and the law.  You must determine what facts have been proved from the evidence received in the trial, not from any other source.  A fact is something proved by the evidence or by stipulation.  Second, you must apply the law that I state to you to the facts as you determine them, and in this way arrive at your verdict.

18

1  You must accept and follow the law as I state it to you , regardless
   of whether you agree with the law.  If anything concerning the law
2  said by the attorneys in their arguments or at any other time during
   the trial conflicts with my instructions on the law, you must follow
3  my instructions.

4  CALCRIM 3550 defines the jurors' duty to deliberate.  The
   decisions you make in this case must be based on the evidence
5  received in the trial and the instructions given by the Court.  These
   are the matters this instruction requires you to discuss for the
6  purpose of reaching a verdict.

7  CALCRIM 3550 also recommends how jurors should approach
   their task.  You should keep in mind the recommendations this
8  suggests when considering the additional instructions and
   comments and suggestions I have made in the instructions now
9  presented to you.

10 I hope my comments and suggestions may have some assistance to
   you.  You are ordered to continue the deliberations at this time.  If
11 you have other questions, concerns, requests, or any
   communications you desire to report to me, please put those in
12 writing on the form my court attendant has provided you with.
   Have them signed and dated by your foreperson, and then please
13 notify the court attendant.

14 I will make copies of this instruction available to you in the
   deliberation room.
15
   I order you at this time to continue your deliberations.  Thank you.
16

17 (RT at 326-30.)

18         About ten minutes after resuming deliberations, the jury requested a read-back of

19 testimony of the testimony of the two arresting officers and petitioner, which occupied the rest of

20 the day and part of the next morning.  An hour and 10 minutes after the conclusion of the read-

21 back, the jury announced a verdict had been reached.

22         Petitioner claims that the trial court's use of the foregoing supplemental

23 instruction without first inquiring whether further deliberations would be productive violated his

24 constitutional rights to due process and a fair trial.  Petitioner argues that the instruction

25 improperly suggested to the jury that failure to reach a verdict was an unacceptable result, and

26 thus was coercive.

19

1    "The term '*Allen* charge' is the generic name for a class of supplemental jury

2    instructions given when jurors are apparently deadlocked..."  *United States v. Mason*, 658 F.2d

3    1263, 1265 n.1 (9th Cir. 1981) (quoting *Allen v. United States*, 164 U.S. 492, 501-502 (1896)).

4    Because it can have the effect of "blasting verdicts out of juries," it is also known in some

5    jurisdictions as the "dynamite charge."  *United States v. Zabriskie*, 415 F.3d 1139, 1148 (10th

6    Cir. 2005).

7         On direct review of petitioner's claim premised on the supplemental instruction at

8    issue, the California Court of Appeal began by noting that, in *Allen*, the Supreme Court approved

9    of a supplemental jury instruction.  *People v. Bright*, *supra*, slip. op. at 18 (citing *Allen*, 164 U.S.

10   at 501-502).  Citing *People v. Gainer*, 19 Cal.3d 835 (1977) and *People v. Moore*, 96

11   Cal.App.4th 1105, 1118-1122 (3rd Dist. 2002), the state court of appeal noted that the California

12   Supreme Court has disapproved of *Allen* in two respects, and consequently has applied a more

13   stringent or restrictive standard with respect to such supplemental instructions.  In a lengthy

14   analysis of state law, the court of appeal concluded that the trial court did not err in giving the

15   jury the supplemental instruction in this case.  *People v. Bright*, *supra*, slip. op. at 18-23.

16        Although the California Court of Appeal did not expressly address petitioner's

17   federal constitutional claims, it compared the challenged instruction to a similar one approved

18   under the standard of the California Supreme Court in *Gainer*, 19 Cal.3d 835.  A state courts is

19   not required to cite Supreme Court cases, or even be aware of them, to avoid rendering a decision

20   "contrary to" Supreme Court precedent, as long as neither the reasoning nor result so contradict.

21   *Early v. Packer*, 537 U.S. at 8.  The Supreme Court has observed that California's *Gainer*

22   standard imposes "even *greater* restrictions for the avoidance of potentially coercive jury

23   instructions [than Supreme Court precedent]."  *Id*. at 7 (emphasis in original).  (holding that

24   AEDPA deference was properly afforded where state court applied *Gainer* standard in denying a

25   claim that the supplemental instruction was coercive); *see also McCambridge v. Hall*, 303 F.3d

26   24, 35 (1st Cir. 2002) (en banc) (if state law standard is more strict than federal law, the federal

1    standard is subsumed within it and de novo review is inappropriate).  Accordingly, the relevant

2    question remains whether the court of appeal's rejection of this claim was contrary to, or an

3    unreasonable application of, clearly established Supreme Court law.

4             The Supreme Court has reversed convictions for a trial court's perceived coercion

5    of the jury into reaching a verdict.  *See*, *e.g.*, *Jenkins v. United States*, 380 U.S. 445, 446 (1965);

6    *United States v. United States Gypsum Co.*, 438 U.S. 422, 459-62 (1978).  But the Court has

7    never held that merely instructing jurors to continue their deliberations, as the trial court did in

8    this case, can amount to coercion.

9             In the seminal *Allen* case, the Court upheld an instruction that urged jurors in the

10   minority to consider the views of the majority, and to ask themselves whether their own views

11   were reasonable under the circumstances.  164 U.S. at 501.  The Court explained that while the

12   verdict

13              should represent the opinion of each individual juror, it by no
                means follows that opinions may not be changed by conference in
14              the jury room. The very object of the jury system is to secure
                unanimity by a comparison of views, and by arguments among the
15              jurors themselves. It certainly cannot be the law that each juror
                shou[l]d not listen with deference to the arguments, and with a
16              distrust of his own judgment, if he finds a large majority of the jury
                taking a different view of the case from what he does himself. It
17              cannot be that each juror should go to the jury room with a blind
                determination that the verdict shall represent his opinion of the
18              case at that moment, or that he should close his ears to the
                arguments of men who are equally honest and intelligent as
19              himself.

20   *Id*.

21             Subsequently, in *Lowenfield v. Phelps*, 484 U.S. 231 (1988), the Supreme Court

22   held that the "continuing validity" of its observations in *Allen* are "beyond dispute and they apply

23   with even greater force" where the trial court's charge, "in contrast to the so-called 'traditional

24   *Allen* charge,' does not speak specifically to the minority jurors."  *Id*. at 237-38.  In *Lowenfield*,

25   the jury had resumed its deliberations and in thirty minutes returned with a verdict sentencing the

26   petitioner to death on all three counts of murder.  *Id*. at 235.  The Supreme Court held that the

1   circumstances did not amount to unconstitutional coercion.  *Id*. at 241; *see also Early v. Packer*,

2   537 U.S. 3 (state court decision finding no jury coercion was reasonable application of Supreme

3   Court precedent).

4          In this case, the supplement instruction given did not run afoul of any of the

5   holdings of the Supreme Court on jury coercion.  The instruction itself was not coercive: It did

6   not imply that any juror should to sacrifice individual judgment for the sake of the majority to

7   reach a verdict.  Rather, it advised jurors to change their position if they became "convinced it is

8   wrong," and to reach a decision "if you can do so."  As the state court found, the order to

9   continue deliberations did not "suggest to the jury that it had to reach a verdict, [but] only that at

10  this point it should resume trying to do so."  *People v. Bright*, *supra*, slip. op. at 19-20.

11  Importantly, the instruction did not comment on the evidence or highlight particular evidence that

12  would support a guilty verdict.  *Cf. Smith v. Curry*, 580 F.3d 1071, 1082-84 (9th Cir. 2009)

13  (supplemental instruction that highlighted certain evidence in support of conviction, and was

14  aimed at a holdout juror, was unconstitutionally coercive, and the state court holding to the

15  contrary was an unreasonable application of Supreme Court precedent).  Nor did the instruction

16  improperly tell the jury how to deliberate.  Rather, it merely suggested that jurors consider new

17  ways of deliberating to see if their views held up to deeper scrutiny.

18         Finally, the Supreme Court has never held that a trial court must poll jurors on

19  whether further deliberations might be helpful before giving an *Allen* charge, as petitioner

20  contends the trial court should have first done.  In this case, it should be noted that the jury had

21  deliberated for only approximately half a day before indicating an impasse had been reached.

22  There was no reason to believe that further deliberations would not be fruitful.  Petitioner's claim

23  regarding the state court's supplemental instruction fails, as the state court's rejection of this

24  claim was neither contrary to, or an unreasonable application of clearly established Supreme

25  Court law.

26  /////

        E.      Reasonable Doubt Instruction

Petitioner claims that the instruction on reasonable doubt violated his right to due process because it failed to correctly apprise the jury of the prosecutor's reasonable doubt burden of proof.

The trial court instructed the jury with CALCRIM No. 220 as follows:

> The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.
>
> A defendant in a criminal case if presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.
>
> Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.
>
> In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal, and you must find him not guilty.

(RT at 299-300.)

On direct review, the California Court of Appeal summarized petitioner's claim in this regard as follows:

> Defendant claims the phrase "impartially compare" in the instruction improperly implied a weighing of two opposed sets of evidence so that if no contrary evidence was put into defendant's side of the scales, the prosecution would have sustained its burden of proof. Defendant claims this error was exacerbated by the use of the phrase "abiding conviction that the charge is true" in the instruction, which according to defendant fails to convey the gravity or weight of the proof required.

*People v. Bright*, *supra*, slip. op. at 24-25.

23

The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). An instruction which misstates the prosecution's burden to prove every element of a crime beyond a reasonable doubt violates due process. *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). In *Victor*, the Supreme court explained the due process standard for evaluating instructions defining reasonable doubt:

> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury."

*Id*. at 5. The relevant question is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* [reasonable doubt] standard. *Id*. at 6. The court's actions and statements are viewed not in isolation, but in light of the totality of the circumstances. *Jiminez v. Myers*, 40 F.3d 976, 980 ("We consider whether the trial court's actions and statements were coercive in the totality of the circumstances.").

The Supreme Court has noted:

> In only one case have we held that a definition of reasonable doubt violated the Due Process Clause. *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (*per curiam*). There, the jurors were told:
>
> "'[A reasonable doubt] ...*must be such doubt as would give rise to a grave uncertainty...*[.] ...*It is an actual substantial doubt...* What is required is not an absolute or mathematical certainty, but a *moral certainty.*'" *Id.,* at 40, 111 S.Ct., at 329.

*Id*. at 5-6 (emphasis added). It was the words "substantial" and "grave," as they are commonly understood, that the Supreme Court found to improperly suggest a higher degree of doubt than is actually required for acquittal. *See Cage v. Louisiana,* 498 U.S. 39, 41 (1990) (*per curiam*).

/////

1    In this case, on direct review, the California Court of Appeal rejected petitioner's

2    claim of error "[f]or the reasons given in [the opinions of other California courts that have

3    considered identical due process contentions]." *People v. Bright*, *supra*, slip. op. at 25 (citing

4    *People v. Stone*, 160 Cal.App.4th 323, 331-32 (2008); *People v. Campos*, 156 Cal.App.4th 1228,

5    1238 (2007); and *People v. Guerrero*, 155 Cal.App.4th 1264, 1268 (2007)).  In *Guerrero*, one of

6    the cases cited by the state court to deny petitioner's claim, the California Court of Appeal held

7    and explained regarding CALCRIM No. 220, the instruction at issue:

8    > Unlike the instruction in [the Supreme Court's case] *Cage*,
     > CALCRIM No. 220 does not suggest an impermissible definition
9    > of reasonable doubt to the jury. The instruction defines reasonable
     > doubt as the absence of an abiding conviction in the truth of the
10   > charges. "An instruction cast in terms of an abiding conviction as
     > to guilt, ... correctly states the government's burden of proof."
11   > (*Victor, supra*, 511 U.S. at pp. 14-15, 114 S.Ct. at p. 1247, 127
     > L.Ed.2d at p. 596.) The instruction neither lowers the prosecution's
12   > standard of proof nor raises the amount of doubt the jury must have
     > in order to acquit a defendant.

13
     > Contrary to defendant's suggestion, CALCRIM No. 220 instructs
14   > the jury to acquit in the absence of evidence. In addressing
     > defendant's claim, we consider whether a "reasonable juror would
15   > apply the instruction in the manner suggested by defendant." The
     > jury is instructed to consider only the evidence, and to acquit
16   > unless the evidence proves defendant's guilt beyond a reasonable
     > doubt. If the government presents no evidence, then proof beyond a
17   > reasonable doubt is lacking, and a reasonable juror applying this
     > instruction would acquit the defendant.

18
     > Due process requires nothing more. CALCRIM No. 220 does not
19   > violate due process.

20   *People v. Guerrero*, 155 Cal.App.4th 1264, 1268-1269 (3rd Dist. 2007) (citation omitted).

21    The state appellate court's rejection of petitioner's claim, by citation to its own

22   cases including its former decision in *Guerrero*, was a reasonable application of Supreme Court

23   precedent.  In particular, the phrase "abiding conviction that the charge is true" comports with the

24   Supreme Court's decision in *Victor*, 511 U.S. at 5.  Moreover, the given instruction comported

25   with the requirements of *In re Winship*, 397 U.S. 358, because it required the prosecution to

26   prove each element of each crime and each special allegation beyond a reasonable doubt.  The

1   Supreme Court has held that the Constitution does not "require that any particular form of words

2   be used in advising the jury of the government's burden of proof." *Victor*, 511 U.S. at 5.

3   Accordingly, petitioner fails to demonstrate that the state court's rejection of his claim was

4   contrary to, or an unreasonable application of clearly established Supreme Court law.

5                   F.       Non-Jury Juvenile Adjudication as a "Strike"

6                   In a bifurcated proceeding following jury trial, the trial court found true that

7   petitioner had incurred a 1993 juvenile court adjudication for attempted second degree murder

8   with personal use of a firearm.  Over the defense's objection, the trial court ruled that this

9   juvenile adjudication counted as a "strike" for purposes of California's habitual criminals, or

10  "three strikes" law.  (RT at 349-51; *see* Cal. Penal Code §§ 667(b)-(i))  The trial court then used

11  the strike to double petitioner's mid-term sentence of two years on count one for illegal

12  possession of a firearm as required under section 667(e)(1) of the California Penal Code.

13                  For his final ground, petitioner claims that his four year sentence on this count

14  violated his Sixth Amendment right to jury trial, because it was increased beyond the statutory

15  maximum on the basis of a conviction that stemmed from a bench trial, as opposed to a jury trial,

16  in violation of the rule explained in *Cunningham v. California*, 542 U.S. 270 (2007).

17                  In *Apprendi\ v. New Jersey*, 530 U.S. 466, 490 (2000), the United States Supreme

18  Court interpreted a criminal defendant's Sixth Amendment right to trial by jury to hold that,

19  "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond

20  the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

21  doubt."  "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge

22  may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the*

23  *defendant*."  *Blakely v. Washington*, 542 U.S. 296, 303-304 (2004) (emphasis in original); *see*

24  *also Cunningham*, 549 U.S. at 293 (holding also that in California the middle term, rather than

25  the upper term is the relevant statutory maximum).

26  /////

                                                26

1    It is clear that *Apprendi* and its progeny do not inhibit a court's use of a prior adult

2   conviction at sentencing.  *United States v. Delaney*, 427 F.3d 1224, 1226 (9th Cir. 2005) ("The

3   Supreme Court has made clear that the fact of a prior conviction need not be proved to a jury

4   beyond a reasonable doubt or admitted by the defendant to satisfy the Sixth Amendment.")

5   (citation omitted); *United States v. Martin*, 278 F.3d 988, 1006 (9th Cir. 2002) ("*Apprendi*

6   expressly excludes recidivism from its scope.  Defendant's criminal history need not be proved to

7   a jury beyond a reasonable doubt." (citations omitted).).  Petitioner contends, however, that his

8   juvenile adjudication is different from an adult conviction, because he did not have the right to

9   jury trial in connection with the juvenile adjudication, and that it therefore should not be used to

10   enhance his sentence beyond the prescribed statutory maximum.

11    In rejecting this claim on direct review, the California Court of Appeal did not

12   conduct an explicit analysis, but instead, noted that several California courts have rejected the

13   same claim, and indicated that, pending further instruction from the California Supreme Court, it

14   would continue to adhere to the view expressed in *People v. Palmer*, 142 Cal.App.4th 724

15   (2007).[3]  *People v. Bright*, *supra*, slip. op. at 26.  In *Palmer*, the California Court of Appeal had

16   held that it agreed with those California and federal courts which found that prior juvenile

17   adjudications fell within the "prior conviction" exception of *Apprendi*, 142 Cal.App.4th at 730-

18   34.

19    The Ninth Circuit has held the *Apprendi* "prior conviction" exception

20   encompasses only those proceedings that provided a defendant with the procedural safeguards of

21   a jury trial including proof beyond a reasonable doubt, and thus disallows the use of non-jury

22   juvenile adjudications as sentence enhancements in federal criminal trials.  *United States v.*

23   *Tighe*, 266 F.3d 1187, 1194 (9th Cir. 2001).  No Supreme Court precedent has applied the rule of

24

25    [3] At the time of the state court of appeal's decision, a case involving the same issue was
pending before the California Supreme Court.  That case, too, was decided adversely to
26   petitioner's claim.  *See People v. Ngyuen*, 46 Cal.4th 1007 (2009).

1  *Apprendi* in such a manner, however, to bar the use of a prior, court-adjudicated juvenile

2  conviction to enhance subsequent sentences.

3           In addition, many federal and state courts to consider the issue have held that non-

4  jury juvenile adjudications *can* be used to enhance and adult sentence without violating the rule

5  of *Apprendi*.  *See, e.g., United States v. Jones*, 332 F.3d 688, 696 (3rd Cir. 2003); *United States*

6  *v. Crowell*, 493 F.3d 744, 750 (6th Cir. 2007); *United States v. Smalley*, 294 F.3d 1030, 1033

7  (8th Cir. 2003); *United States v. Burge*, 407 F.3d 1183, 1190-91 (11th Cir. 2005); *Ryle v. State*,

8  842 N.E.2d 320, 322 (Ind. 2005); *State v. Hitt*, 42 P.3d 732, 740 (Kan. 2002); *but see Tighe*, 266

9  F.3d at 1194 ("[j]uvenile adjudications that do not afford the right to a jury trial and a beyond-a-

10  reasonable-doubt burden of proof do not fall within *Apprendi*'s 'prior conviction' exception");

11  *State v. Harris*, 118 P.3d 236, 238-46 (Or. 2005) (allowing use of prior juvenile adjudications as

12  sentencing factors but requiring that their existence be admitted by the defendant or proved to a

13  trier of fact); *State v. Brown*, 879 So.2d 1276, 1281-1290 (La. 2004) (distinguishing juvenile

14  adjudications from prior convictions because juvenile adjudications are "civil" proceedings under

15  Louisiana law).

16           This weight of authority tends to show that the California Court of Appeal's

17  rejection of petitioner's claim, while inconsistent with the Ninth Circuit's decision on direct

18  review of a federal criminal conviction in *Tighe*, is not contrary to, or an unreasonable

19  application of Supreme Court precedent.  *See Price v. Vincent*, 538 U.S. 634, 643 n.2 (2003)

20  (citing lower federal and state court cases to show that the state court's adjudication was not

21  objectively unreasonable); *Boyd v. Newland*, 467 F.3d 1139, 1152 (9th Cir. 2006) the [*Tighe*]

22  opinion does not represent clearly established federal law 'as determined by the Supreme Court

23  of the United States.'").  Accordingly, petitioner is not entitled to relief for any of his claims

24                            VI.  CONCLUSION

25           For the foregoing reasons, IT IS HEREBY RECOMMENDED that the application

26  for writ of habeas corpus be DENIED.

1    These findings and recommendations are submitted to the United States District

2    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

3    one days after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6    shall be served and filed within seven days after service of the objections.  Failure to file

7    objections within the specified time may waive the right to appeal the District Court's order.

8    *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

9    1991).

10   DATED: April 1, 2011

11

12   CHARLENE H. SORRENTINO
     UNITED STATES MAGISTRATE JUDGE

13